Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 15 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRIAN J. MAY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTWON DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1304-CR-130 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1012-FC-282

**August 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Antwon Davis appeals his conviction for Class C felony child molesting. We affirm.

**Issue**

The sole issue before us is whether the trial court abused its discretion when it prohibited Davis from reading ten pages of a United States Supreme Court opinion during his closing argument.

**Facts**

During early December 2010, Davis was living in South Bend with his girlfriend Sharon Weatherall. Weatherall's daughter, S.W., who was seven years old, went to sleep in her mother's bed one evening. Davis lay in bed with S.W. and touched S.W.'s vagina. The next day, S.W. went to school and told her teacher about the incident with Davis. The school contacted Child Protective Services and the St. Joseph County Police Department.

Detective Dave Sult of the St. Joseph County Police Department called Davis and told Davis that he wanted to meet with him. Davis met with Detective Sult on December 14, 2010. Detective Sult used the "Reid" technique to interview Davis, which is a method of interrogation that involves nine steps to get the "truth out." Tr. p. 209. Detective Sult received special training in that area; this method is often used by law enforcement to question suspects. He initially built a rapport with Davis and, after some conversation, advised Davis of his <u>Miranda</u> rights. Davis voluntarily signed a <u>Miranda</u> waiver, and Detective Sult questioned him about the incident. Initially, he denied

touching S.W. and, after further interrogation, eventually admitted to inappropriately touching her. The interview lasted approximately one hour.

Davis was arrested and charged with Class C felony child molesting. On February 26, 2013, during his jury trial, Davis testified that he did not touch S.W. inappropriately, that the reason he said he did was because he was angry with Detective Sult, and that Detective Sult made him say it. Prior to the closing arguments, Davis's counsel indicated that he wanted to read aloud ten pages from Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), to the jury, but the trial court prohibited him from doing so. The jury found Davis guilty as charged, and he was sentenced to four years executed. He now appeals.

**Analysis**

Davis claims that the trial court abused its discretion when it prohibited him from reading ten pages of Miranda during his closing argument. "Control of final argument is assigned to the discretion of the trial judge." Rouster v. State, 600 N.E.2d 1342, 1347 (Ind. 1992). Unless there is an abuse of this discretion that is clearly prejudicial to the rights of the accused, the trial court ruling will not be disturbed. Emerson v. State, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011) trans. denied. We will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. Among matters within a trial court's discretion is whether to allow a defendant's attorney to read from appellate court decisions as part of closing argument. Schlabach v. State, 459 N.E.2d 740, 742 (Ind. Ct. App. 1984) (quoting Lax v. State, 414 N.E.2d 555, 557 (Ind. 1981)).

3

Davis argues that he was denied the opportunity to present his defense when he was prohibited from reading ten pages of the Miranda case during his closing argument. He states that the case discussed "in much greater detail the psychological workings of a police interview" and would have helped diminish the probative value of his confession to Detective Sult. Appellant's Br. p. 8.

However, even if we were to assume without deciding that Davis should have been permitted to read from Miranda during closing argument, "any abuse of discretion in restricting the scope of closing argument is subject to harmless error analysis." Nelson v. State, 792 N.E.2d 588, 592 (Ind. Ct. App. 2003), trans. denied. Davis was not prejudiced when he was prohibited from reading from Miranda because he was still able to present his defense to the jury. He was able to vigorously question Detective Sult about the interrogation. During his closing argument, he was able to state in great detail criticism of the "Reid" interrogation technique. Davis explained that the method is disfavored by the courts, and he further highlighted to the jury the disadvantages Davis had during the interview process. His closing argument, therefore, was not unduly harmed by the prohibition against reading from Miranda because he was still able to effectively challenge the veracity of his confession.

**Conclusion**

Even if we were to assume Davis should have been allowed to read from Miranda during his closing argument, any such error was harmless. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.

4